FILED

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA 03 MAR 27 PM 1:10
EASTERN DIVISION

U.S. DISTRICT COURT
N D OF ALABAMA

| | |
|---|---|
| WILLIAM BORDEN, et al., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | Civil Action No.: 02-PT-1704-E |
| ) | |
| ROBINSON FOUNDRY, INC., ) | |
| ) | |
| Defendant. ) | |

ENTERED

MAR 27 2003

## MEMORANDUM OPINION

This cause comes on to be heard upon Defendant Robinson Foundry, Inc.'s ("Robinson") Motion for Summary Judgment (Doc. 42), filed on January 8, 2003.[1]

### FACTS AND PROCEDURAL HISTORY[2]

Robinson is an Alabama corporation in the business of manufacturing aluminum and iron castings, primarily for the automobile industry. *See* Compl. at ¶ 13; Def. Ex. 2 at ¶ 3. Plaintiffs[3] are all African American, and are or were employed by Robinson, working in the Cleaning Room.[4] *See* Compl. at ¶¶ 3-12, 14-22; Def. Ex. 2 at ¶ 4. This lawsuit, alleging various forms of racial discrimination, is brought pursuant to Title VII, 42 U.S.C. § 2000e *et seq.*, and 42 U.S.C. § 1981.

---

[1] On March 24, 2003, the court heard recorded oral arguments after having considered the briefs and factual submissions of the parties and having attempted to get further written definition of the claims.

[2] The Statement of Facts and the recitation of the parties' arguments may overlap somewhat.

[3] Plaintiffs Daphne Smith and Dexter Fuller were dismissed by court order on November 21, 2002.

[4] At oral argument, plaintiffs called it the Cleaning and Core Department.



## I. Claims Listed by Plaintiffs' in Their Summary Judgment Submission

### A. Job Training Programs

Plaintiffs contend that Robinson admits that the company offers on the job training programs, but that it consistently refuses to offer African American employees the same opportunities to train as the Caucasian employees. Robinson notes that plaintiffs have cited no evidence to support this assertion.[5] Plaintiffs also note that Ryan Robinson, the Manufacturing Manager at Robinson, testified that "[i]f we put an individual in a nonskilled force work area, we will have another individual show him how to perform it." *See* Robinson Depo. [hereinafter "Pl. Ex. E"] at 15. However, when asked whether Robinson offers on the job training, Ray Robinson responded "[n]ot as a general practice, no. . . . As far as improving one's education, no." *Id.*

### B. Failure to Post Jobs

Plaintiffs contend that Robinson rarely posted job openings when they became available, specifically in the Pattern Shop and Maintenance Area. Ray Robinson testified that "we are a relatively small company, and we've worked with the majority of people there. And we pretty much know the skills of our workforce." *See* Pl. Ex. E at 16-17. Robinson notes that Ray Robinson also testified that "[w]e post. Sometimes we post jobs. When we do post jobs, if we can move someone from within, we try to." *Id.* Robinson asserts that most of its employees do not have the technical skills necessary for jobs in the Maintenance Area, Pattern Shop and some jobs in Process control. *See* Def. Ex. 2 at ¶ 13. When non-entry level, non-technical jobs become available, Robinson contends, the company normally posts the opening on a bulletin board in the break room. *Id.* at ¶ 14. Robinson contends that in the last five years, there have

---

[5] This court has found none.

been no technical job openings for which plaintiffs were qualified. *Id.* at ¶ 15. Of the ten non-technical jobs filled in the last two years, seven were filled by African Americans and three by Caucasians. *Id.* at ¶ 16.

Plaintiffs also assert that even though the majority of Robinson's employees are African American, promotional and advancement opportunities go primarily to Caucasian employees. Robinson notes that plaintiffs have cited no evidence to support this last assertion.[6]

C. Hiring African Americans to Fill the Lowest Paying Jobs

Plaintiffs assert that African American employees are hired to fill the lower paying jobs, while Caucasian employees are hired to fill the highest paying jobs. For example, plaintiffs claim that only four Caucasian employees work in the Cleaning Room, while there are no African Americans in the Pattern Shop and only one or two in the Maintenance Area. Robinson notes that plaintiffs have cited no evidence to support these assertions.

By contrast, Robinson notes that its pay system is based on the job, skills required, merit, seniority, and attendance. *See* Def. Ex. 2 at ¶ 17. Raises likewise are based on merit and attendance. *Id.* Robinson asserts that the Cleaning Room is where the castings are ground and finished, and that this is basically unskilled work. *Id.* at ¶¶ 4, 18. Also, the five highest paid employees in the Cleaning Room are African American. *Id.* at ¶ 19. Robinson contends that similarly situated Caucasian employees are not paid more than African American employees. *Id.* at ¶ 20.

---

[6]At oral argument, the plaintiffs acknowledged that they do not make any claims based upon initial hiring decisions. As to possible promotions, they simply list some nine (9) jobs which were filled sometime between 1989 and 2002, but offer no evidence of when any plaintiffs should have been considered for them, or which plaintiffs were or were not qualified for the positions.

D. Working Conditions

Plaintiffs contend that the working conditions in the Cleaning Room are dangerous and deplorable, while the conditions in the Pattern Shop and Maintenance Area are safe and healthy. Robinson notes that plaintiffs have cited no evidence to support these assertions.

By contrast, Robinson asserts that its facilities are not in a different conditions than other foundries. *See* Def. Ex. 2 at ¶ 21. Robinson contends that it has installed numerous heaters and ceiling fans to make the foundry warmer and/or cooler when appropriate. *Id.* at ¶¶ 22-23. While acknowledging that the Pattern Shop is climate controlled, Robinson contends that this is necessary so that the machinery works properly and the patterns are properly prepared. *Id.* at 24. Indeed, only two employees regularly work in the Pattern Shop. *Id.*

E. Promotion Claims

Plaintiffs assert that Robinson promotes Caucasian employees faster and in greater numbers than similarly situated African American employees. As an example, plaintiffs contends that employee Charles Story, a Caucasian, was promoted to the position "lead man" two years after he was hired. By contrast, it took plaintiff William Borden approximately nine years to get promoted to the same position. Furthermore, plaintiffs allege, Charles Story is allowed to sit down while he performs part of his duties, *see* Story Depo. [hereinafter "Pl. Ex. D"] at 15, while William Borden had a chair and desk that were taken away from him. However, Charles Story testified that he does not have a desk, but rather a tool cabinet/table that has a chair with it. *Id.* Charles Story testified that "I have to order parts at times, and I sit down in it [the chair] to write my part order out." *Id.* He further testified that he spent approximately ten

4

minutes, once a day, filling out a parts order. *Id.* at 16.[7]

## II. Claims Listed in Plaintiffs' Complaint[8]

### A. Plaintiff William Borden ("Borden")

Borden asserts that he has worked for Robinson for twelve years. *See* Compl. at ¶ 36. During that time, his pay has risen from $5.00 per hour to $9.25 per hour. *Id.* Borden claims that although he has been promoted to a "leads man," he is making less than his Caucasian counterpart. *Id.*[9] Second, Borden asserts that he applied for a supervisor position in 1998 and was rejected. *Id.* at ¶ 37. Dennis Gauntney ("Gauntney"), a Caucasian employee, was hired from the outside for the position. *Id.* Borden claims that Gauntney had no experience in foundry work, and that a group of African American employees, including Borden, had to train him. Borden asserts that Gauntney makes more money than the African American employees that trained him. *Id.*[10]

Third, Borden contends, his job requires that he sit and write for an average of five (5) hours per day. *Id.* at ¶ 38. He asserts that he needs a desk and chair in order to do his job effectively. *Id.* Borden was forced to make his own chair and desk in order to alleviate the pain

---

[7]A full consideration of the evidence related to the "desk and chair" reveals no substantial evidence creating a reasonable inference of discrimination. Apparently, whatever was done was somewhat makeshift.

[8]Robinson has filed a Motion to Strike and/or Motion to Dismiss (Doc. 47) with respect to plaintiffs' initial submission. Robinson argues that plaintiffs' submission completely fails to comply with this court's submission order, and that as a result it has been severely prejudiced. Out of an "abundance of caution," Robinson addressed the allegations in the plaintiffs' complaint, in addition to what they submitted for summary judgment. The court will do the same. Plaintiffs filed a response (Doc. 48) in which they assert that they are in compliance with the submission order.

[9]At oral argument plaintiffs acknowledged that they make no pay disparity claims *vis a vis* the Cleaning and Core Department.

[10]Robinson notes that Borden filed an EEOC charge with respect to this promotion, but it was dismissed by the EEOC. *See* Def. Ex. 2 at ¶ 25. No timely suit was thereafter filed. A refiled charge was not timely as to this promotion.

of standing and writing for five hours, but the desk was ultimately removed by Borden's supervisor. *Id.* Borden asserts that the desk was taken away in retaliation for filing this lawsuit. *Id.* at ¶ 39. Borden contends that Charles Story, a similarly situated Caucasian, was given an office with a desk and chair. *Id.* at ¶ 38. Finally, Borden asserts that Robinson maintains a hostile work environment, relegates African American employees to one department, and provides them with deplorable working conditions inferior to those of Caucasians. *Id.* at ¶¶ 40-43. Borden filed three counts: (1) racial discrimination with respect to promotions and salaries, (2) pattern and practice discrimination with respect to promotions, and (3) retaliation. *Id.* at ¶¶ 44-52.

Robinson notes that Borden was promoted to Lead Person over the Cleaning Room effective December 3, 1998. *See* Borden Depo. [hereinafter "Def. Ex. 1"] at 26; Def. Ex. 2 at ¶ 5. Also, Borden has never bid on a job, and the only job that he believes he should have received was the November 1998 position that was awarded to Gauntney. *See* Def. Ex. 1 at 46-49. Robinson also points to testimony in which Borden stated that he liked Robinson, that he actually made $9.55 per hour, that he does not know whether any Lead Person makes more than him, and that the pay "is really not that bad." *Id.* at 42-44.

Finally, as to the desk and chair incident, Robinson notes that Borden testified that, as a Lead Person, he has to complete tickets and production sheets. *Id.* at 77-78. However, he also testified that it only takes a few seconds to fill out each form, and that he only fills out 20 to 30 tickets and 2 production sheets each day. *Id.* at 78-79.[11] Robinson also asserts that Borden's "desk" was actually a sheet of cardboard on top of a 55 gallon drum and his "chair" was a five

---

[11]Examples of the two forms can be found at Def. Ex. 2, depo. exhibit 1.

gallon bucket covered with a piece of cardboard. *See* Def. Ex. 2 at ¶ 9. The desk and chair were removed, Robinson asserts, because representatives from Honda were coming to the facility, and Robinson did not want to make a bad impression. *Id.* at ¶ 8. In addition, podiums were constructed in the Cleaning Room for the employees to use. *Id.* at ¶¶ 10-11. Charles Story does not work in the Cleaning Room. *Id.* at ¶ 12.[12]

B. Plaintiff James Frazier ("Frazier")

Frazier asserts that he has worked for Robinson for four years. *See* Compl. at ¶ 53. During that time, his pay has risen from $5.75 per hour to $7.40 per hour. *Id.* Frazier contends that Robinson refuses to pay an African American employee more than $10.00 per hour, regardless of their years of service or experience. *Id.* at ¶ 54. Frazier also asserts that Robinson maintains a hostile work environment, relegates African American employees to one department, and provides them with deplorable working conditions inferior to those of Caucasians. *Id.* at ¶¶ 54-57. Frazier filed two counts: (1) racial discrimination with respect to promotions and salaries, and (2) pattern and practice discrimination with respect to promotions. *Id.* at ¶¶ 58-63.

Robinson notes that, regarding promotions, Frazier testified that he has never applied for a promotion and that he is not seeking another job. *See* Frazier Depo. [hereinafter "Def. Ex. 3"] at 21. Specifically, when asked "[a]re there any promotions you think you should have gotten that you haven't gotten?", Frazier replied "I haven't applied for any. I like the job I got." *Id.* at 21. Frazier later testified that he had no complaints about promotions. *Id.* at 38. As to the pay claims, Robinson notes that Frazier has no electrical, maintenance, or pattern making experience. *Id.* at 11-12. Frazier did receive a special raise because he was doing more work than other

---

[12] Again, there is no reasonable inference of discrimination with regard to the "desk."

7

people. *Id.* at 18. Frazier testified that he did not know of any place where he could make more money than he did at Robinson. *Id.* at 20-21. Finally, Frazier testified that, except for a headache during his deposition, he has not suffered any severe emotional distress. *Id.* at 32.

### C. Plaintiff Thomas Taylor ("Taylor")

Taylor asserts that he has worked for Robinson for sixteen years. *See* Compl. at ¶ 64. During that time, his pay has risen from $5.15 per hour to $8.20 per hour. *Id.* Taylor also asserts that Robinson maintains a hostile work environment, relegates African American employees to one department, and provides them with deplorable working conditions inferior to those of Caucasians. *Id.* at ¶¶ 65-68. Taylor filed two counts: (1) racial discrimination with respect to promotions and salaries, and (2) pattern and practice discrimination with respect to promotions. *Id.* at ¶¶ 69-74.

As to promotions, Robinson notes, Taylor has never bid on a job[13] or ever expressed interest to Robinson's management about receiving a promotion. *See* Taylor Depo. [hereinafter "Def. Ex. 4"] at 23-24. Moreover, Taylor has no experience as a pattern maker, an electrician, a maintenance man, or on computers. *Id.* at 25-26. Taylor also testified that he finished the eleventh grade and that he thought that there are 10,000 pounds in a ton. *Id.* at 27.[14] Taylor further testified that the only job that he thought he should have gotten was "working on the machines;" however, he acknowledged that the employee currently working in that job has been in that position for more than five years. *Id.* at 28-29. As for the pay claim, Taylor testified that

---

[13]Taylor did state that the sign-up sheets were always full by the time he saw them. *Id.*

[14]The court assumes that some of the jobs at issue would require a certain level of education or knowledge of certain measurements. There is no substantial evidence that any plaintiff was qualified for any position which he or she vaguely suggests he or she should have received.

8

he has never complained about the pay that he receives. *Id.* at 57. He also testified that the he had never seen nor signed the EEOC charge that bears his signature. *Id.* at 59-60.

### D. Plaintiff Paul Brooks ("Brooks")

Brooks asserts that he has worked for Robinson for seven years. *See* Compl. at ¶ 75. During that time, his pay has risen from $6.00 per hour to $8.35 per hour. *Id.* Brooks also asserts that Robinson maintains a hostile work environment, relegates African American employees to one department, and provides them with deplorable working conditions inferior to those of Caucasians. *Id.* at ¶¶ 76-79. Brooks filed two counts: (1) racial discrimination with respect to promotions and salaries, and (2) pattern and practice discrimination with respect to promotions. *Id.* at ¶¶ 80-85.

As to the promotion claims, Robinson notes, Brooks has no training as an electrician, machinist, maintenance person, or pattern maker. *See* Brooks Depo. [hereinafter "Def. Ex. 9"] at 16-17. Robinson also notes that Brooks cannot spell his middle name, and that he does not have an Alabama driver's license as he cannot pass the written test. *Id.* at 7, 10. Robinson asserts that Brooks testified that the only job that he wanted was the position of Lead Person, a job which he currently has. *Id.* at 37-38. With regards to the pay claims, Brooks testified that he actually makes more than $8.35 an hour and does not know of, and has not looked for, a better paying job that he could get. *Id.* at 37, 58. Brooks testified that he had never worked at any other job that paid more than $8.00 per hour. *Id.* at 60.

### E. Plaintiff George Chiles ("Chiles")

Chiles asserts that he has worked for Robinson for seven years. *See* Compl. at ¶ 97. During that time, his pay has risen from $5.35 per hour to $8.00 per hour. *Id.* Chiles also asserts

9

that Robinson maintains a hostile work environment, relegates African American employees to one department, and provides them with deplorable working conditions inferior to those of Caucasians. *Id.* at ¶¶ 98-101. Chiles filed two counts: (1) racial discrimination with respect to promotions and salaries, and (2) pattern and practice discrimination with respect to promotions. *Id.* at ¶¶ 102-07.

As to the promotion claims, Robinson notes, Chiles never discussed any complaints of racial discrimination with the management at Robinson. *See* Chiles Depo. [hereinafter "Def. Ex. 8"] at 53-55. Chiles testified that he never bid on a job, and never tried to get a promotion that he did not receive. *Id.* at 64. Robinson asserts that the only job that Chiles felt that he should have gotten but did not was in fact never filled. *Id.* at 65-66. With regards to the pay claims, Robinson notes that Chiles actually makes $7.85 per hour. *Id.* at 47. Chiles also testified that he did not know whether the signature on his EEOC charge was his own. *Id.* at 75.

F. Plaintiff Judy Hoyett ("Hoyett")

Hoyett asserts that she has worked for Robinson for six years. *See* Compl. at ¶ 108. During that time, her pay rose from $5.00 per hour to $7.00 per hour. *Id.* Hoyett also asserts that Robinson maintains a hostile work environment, relegates African American employees to one department, and provides them with deplorable working conditions inferior to those of Caucasians. *Id.* at ¶¶ 109-12. Hoyett filed two counts: (1) racial discrimination with respect to promotions and salaries, and (2) pattern and practice discrimination with respect to promotions. *Id.* at ¶¶ 113-18.

As to the promotion claims, Robinson notes, Hoyett has no electrical experience, limited machinist experience, and no pattern making experience. *See* Hoyett Depo. [hereinafter "Def.

Ex. 7"] at 20-22. Moreover, Hoyett testified that she did not know how many pounds are in a ton or what calipers are. *Id.* at 23-26. Hoyett testified that she had never operated a forklift. *Id.* at 25. Hoyett has never sought a promotion at Robinson, and stated that there were no jobs that she thought that she should have gotten but did not receive. *Id.* at 39-40. Further, she testified that she loved her job. *Id.* at 42. Hoyett was terminated for admittedly falsifying a doctor's excuse. *Id.* at 29-30. With regards to the pay claims, Robinson notes that Hoyett stated that Robinson was her highest paying job, and that she did not know the name of a similarly situated Caucasian who received more money than her. *Id.* at 39, 54-55. Hoyett also testified that the signature on the EEOC charge is not her own. *Id.* at 59-60.

G. <u>Plaintiff Beverly Trimble Brown ("Brown")</u>

Brown asserts that she has worked for Robinson for six years. *See* Compl. at ¶ 119. During that time, her pay has risen from $5.50 per hour to $7.25 per hour. *Id.* Brown also asserts that Robinson maintains a hostile work environment, relegates African American employees to one department, and provides them with deplorable working conditions inferior to those of Caucasians. *Id.* at ¶¶ 120-23. Brown filed two counts: (1) racial discrimination with respect to promotions and salaries, and (2) pattern and practice discrimination with respect to promotions. *Id.* at ¶¶ 124-29.

As to the promotion claims, Robinson asserts, Brown has had no training as an electrician, machinist, and she cannot operate a computer. *See* Brown Depo. [hereinafter "Def. Ex. 6"] at 18-19. Robinson also notes that when Brown asked for a job as an inspector, she received it. *Id.* at 24. Brown also applied for a job as a lab technician, but the position was ultimately filled by Daphne Smith, an African American female. *Id.* at 30. Brown testified that

she would like the job of Lead Person in the Cleaning Room, but acknowledged that the position is still open. *Id.* at 30-31. Robinson also notes that Brown received a disciplinary layoff for testing positive for drugs. *Id.* at 55. With regards to the pay claims, Robinson notes that Brown testified that her job at Robinson was the highest paying job that she ever had. *Id.* at 29-30. She also testified that she has not suffered severe emotional distress. *Id.* at 40-41. Finally, Robinson notes, Brown could not testify that the signature of the EEOC charge was her own. *Id.* at 47-52.

H. Plaintiff Shirley Thomas ("Thomas")

Thomas asserts that she has worked for Robinson for two years. *See* Compl. at ¶ 141. During that time, her pay has risen from $5.15 per hour to $7.00 per hour. *Id.* Thomas also asserts that Robinson maintains a hostile work environment, relegates African American employees to one department, and provides them with deplorable working conditions inferior to those of Caucasians. *Id.* at ¶¶ 142-45. Thomas filed two counts: (1) racial discrimination with respect to promotions and salaries, and (2) pattern and practice discrimination with respect to promotions. *Id.* at ¶¶ 146-51.

Regarding any promotion claims, Robinson notes, Thomas has no electrical, machinist, or maintenance experience, or experience with pattern making. *See* Thomas Depo. [hereinafter "Def. Ex. 5"] at 15-16. Thomas did not graduate from high school, and testified that there were 24 pounds in a ton. *Id.* at 10, 13. Thomas further testified that she never bid on a job at Robinson. *Id.* at 47. Finally, Robinson contends that the only job that Thomas wanted that she did not receive was for a position that was ultimately filled by Daphne Smith, an African American female. *Id.* at 29-30, 47. As to the pay claim, Robinson notes that Thomas left Robinson for a job at another company, where she currently makes less per hour, but also works

more hours. *Id.* at 32.

## SUMMARY JUDGMENT STANDARD

Summary judgment may be granted based upon facts developed through pleadings, discovery, and supplemental affidavits, etc., if together, they show that there is no genuine issue as to any material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323 (1986). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The party moving for summary judgment bears the initial burden of explaining the basis of his motion. *Celotex*, 477 U.S. at 323. "It is never enough [for the movant] simply to state that the non-moving party could not meet their burden at trial." *Mullins v. Crowell*, 228 F.3d 1305, 1313 (11th Cir. 2000) (quotation omitted). The non-moving party then bears the burden of pointing to specific facts demonstrating that there is a genuine issue of fact for trial. *Celotex*, 477 U.S. at 324. The non-moving party "must either point to evidence in the record or present additional evidence 'sufficient to withstand a directed verdict motion at trial based on the alleged evidentiary deficiency.'" *Hammer v. Slater*, 20 F.3d 1137, 1141 (11th Cir. 1994) (quotation omitted). Summary judgment is required where the non-moving party merely repeats its conclusory allegations, unsupported by evidence showing an issue for trial. *Comer v. City of Palm Bay*, 265 F.3d 1186, 1192 (11th Cir. 2001) (citation omitted).

Summary judgment will not be granted until a reasonable time has been allowed for discovery. *Comer*, 265 F.3d at 1192. Moreover, "[w]hen deciding whether summary judgment is appropriate, all evidence and reasonable factual inferences drawn therefrom are reviewed in a light most favorable to the non-moving party." *Korman v. HBC Florida, Inc.*, 182 F.3d 1291,

1293 (11th Cir. 1999). Finally, the trial court must resolve all reasonable doubts in favor of the non-moving party, although it need not resolve all doubts in a similar fashion. *Earley v. Champion Int'l Corp.*, 907 F.2d 1077, 1080 (11th Cir. 1990).

## ARGUMENTS

### I. Plaintiffs' Position

Plaintiffs argue that under Title VII, employment practices that are neutral on their face, and even neutral in intent, cannot be maintained if they operate to freeze the status quo of prior discrimination. *See Griggs v. Duke Power Co.*, 401 U.S. 424 (1971). The Civil Rights Act "proscribes not only overt discrimination but also practices that are fair in form, but discriminatory in operation." *Griggs*, 401 U.S. at 431. Also, "good intent or absence of discriminatory intent does not redeem employment procedures or testing mechanisms that operate as 'built-in headwinds' for minority groups and are unrelated to measuring job capability." *Griggs*, 401 U.S. at 432.

In this case, plaintiffs contend, the non-posting of certain job openings under the pretext that the employees at the plant would not qualify for the jobs is Robinson's purposeful attempt to maintain the status quo. They contends that such a practice is denigrating and patronizing and is evidence of discrimination. The employment practice of not posting job, plaintiffs argue, is discriminatory on its face and in practice. Plaintiffs also argue that African Americans are relegated to the lowest paying and most unsafe jobs in the entire facility, despite numerous complaints about the job conditions.

Plaintiffs also point specifically to the fact that Charles Story was promoted faster than Borden, and that he was allowed to have a desk and chair while Borden was not.

## II. Defendant's Response

### A. Promotion Claims

Robinson notes that in order to establish a *prima facie* case of discrimination, a plaintiff must show that (1) he belongs to a protected class, (2) he applied and was qualified for a job for which the employer was seeking applicants, (3) he was rejected, and (4) the position remained open and the employer continued to seek applicants. *Hill v. Seaboard Coast Line R.R. Co.*, 885 F.2d 804, 808 (11th Cir. 1989). Robinson argues that plaintiffs have failed to show that there is any position that they sought which was denied to them. Further, Robinson contends, they have failed to show that they were qualified for the positions or that a Caucasian employee with similar qualifications was promoted. The only exception might be Borden, who claimed that he should have been given the position that was awarded to Gauntney. However, Robinson argues, that position was awarded in 1998, so the statute of limitations under § 1981 has run. Moreover, Borden filed a charge with the EEOC and received a right to sue letter more than 180 days before this lawsuit was filed. *See* Def. Ex. 2 at ¶ 25. Thus, any Title VII claim is barred as well.

Even if the court found that plaintiffs had made out the *prima facie* case, Robinson contends, it has articulated legitimate, non-discriminatory reasons for its decisions to fill job vacancies, i.e., it chose the best qualified person for each position. *See Denney v. City of Albany*, 247 F.3d 1172, 1187 (11th Cir. 2001) (holding that a plaintiff must make "a strong showing of a disparity in qualifications in order for an inference of discrimination to arise"). Thus, Robinson asserts, any claim, including a retaliation claim, that is related to promotions must be dismissed.

### B. Pay Claims

Robinson argues that these claims must be dismissed because the plaintiffs have not

identified any similarly situated Caucasian employees who are paid differently than them. *See Trotter v. Bd. of Trustees*, 91 F.3d 1449, 1457 (11th Cir. 1996) ("The plaintiffs adduced absolutely no evidence . . . that African-Americans in the diabetes unit were paid less than their white co-workers."). Moreover, Robinson notes, many plaintiffs testified that they were satisfied with their pay or that they could not think of another job that would pay more money than Robinson. Robinson contends that it has presented a legitimate, non-discriminatory reason for the amounts of wages that it pays its employees, and plaintiffs have failed to show that this reason is pretextual.

C. Retaliation

Robinson responds to Borden's claim that he was retaliated against for filing a race discrimination claim. First, Robinson notes, a plaintiff must demonstrate an adverse employment action against him. *See Gupta v. Florida Bd. of Regents*, 212 F.3d 571, 587 (11th Cir. 2000), *cert. denied*, 531 U.S. 1076 (2001). Robinson argues that replacing a "desk" and "chair" with a podium can in no way be seen as an adverse employment action. Further, Robinson contends, it articulated a legitimate, non-discriminatory reason for taking away the desk, i.e., that the podium would look more impressive to a potential customer than a combination of buckets, drums, and cardboard. *See* Def. Ex. 2 at ¶¶ 8-11. Moreover, the podium would require Borden to perform his duties instead of wasting time sitting at his "desk."

D. Pattern and Practice

Robinson contends that plaintiffs have presented absolutely no evidence of a pattern and practice of discrimination with respect to pay, promotions, or other terms and conditions of employment. Robinson notes that plaintiffs have failed to identify even isolated or sporadic

discriminatory acts, much less such acts which would constitute Robinson's standard operating procedure. *See Hipp v. Liberty Nat'l Life Ins. Co.*, 252 F.3d 1208, 1227 (11th Cir. 2001) ("In a pattern and practice case, plaintiffs must establish by a preponderance of the evidence not only that the employer discriminated against certain individuals, but that 'discrimination was the company's standard operating procedure--the regular rather than the unusual practice.'") (citation omitted).

E. Attorney's Fees

In its response, Robinson also asks the court for attorney's fees and costs. Robinson notes that the court "may in its discretion award attorney's fees to a prevailing defendant in a Title VII case upon a finding that the plaintiff's action was frivolous, unreasonable, or without foundation, even though not brought in subjective bad faith." *Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 421 (1978). Further, fees may be awarded when plaintiffs continue to litigate after they know that such claims were frivolous. *Id.* at 422. Robinson argues that if this case does not satisfy *Christiansburg* ans its progeny,[15] then no case ever would. As support, Robinson notes that (1) four of the plaintiffs testified that they did not sign their EEOC charge or could not swear that their signature appeared on the charge, (2) most of the plaintiffs testified that they had never sought a promotion, yet a promotion claim was asserted on their behalf, (3) no plaintiff could name a similarly situated Caucasian employee that was paid more, yet they prosecuted pay claims, and (4) no evidence of a *prima facie* case or a pattern and practice of discrimination was ever produced. Robinson also notes this court's order of August 2, 2002, in

---

[15]Robinson also cites *Turner v. Sunguard Bus. Sys., Inc.*, 91 F.3d 1418, 1422 (11th Cir. 1996), *EEOC v. Shoney's, Inc.*, 542 F. Supp. 332, 334 (N.D. Ala. 1982), and *Porter v. Am. Cast Iron Pipe Co.*, No. CV-91-P-1870-S, 1992 WL 209549 (N.D. Ala. June 18, 1992).

which the court reminded the parties to review *Worldwide Primates, Inc. v. McGreal*, 26 F.3d 1089 (11th Cir. 1994) and *Worldwide Primates, Inc. v. McGreal*, 87 F.3d 1252 (11th Cir. 1996). Robinson further argues that the plaintiffs' submission with regards to summary judgment completely fails to comply with this court's submission order. Finally, Robinson notes that it is a relatively small employer and has had to incur substantial costs in defending an action for which there is absolutely no basis.

## CONCLUSIONS OF THE COURT

The court concludes that there is no substantial evidence which creates any reasonable inference of discrimination in any manner. At oral argument, the court determined that:

(1) Plaintiffs only attempt to compare to other employees in the Pattern and Maintenance Departments. Plaintiffs make no disparate pay claims within their own department. The jobs in the Pattern and Maintenance Departments are clearly not similar to the jobs of plaintiffs in the Cleaning and Core Department. There is no discriminatory pay disparity.

(2) Plaintiffs acknowledged that they make no discriminatory hiring claims.

(3) Although given an opportunity to be more specific, plaintiffs only claim that <u>sometime</u> between 1989 and 2002 (no specific dates provided), some white persons were given jobs in the Pattern and Maintenance Departments which were not posted. The one specific job and date referenced was not the subject of a timely EEOC charge and suit or a § 1981 action. There is no evidence, otherwise, that any specific plaintiff is qualified for any specific job. The only substantial evidence is to the contrary.

Plaintiffs also make general accusations about the working conditions. Again, plaintiffs attempt to compare to obviously dissimilar jobs. Many foundry type jobs are uncomfortable by

nature. There is no substantial evidence that the conditions here were based on race.

Much of plaintiffs' "evidence" of discrimination is the lack of posting of jobs. While the lack of posting may eliminate the need for applications in order to establish a *prima facie* case, it does not, in and of itself, establish a claim of discrimination in promotions.

The court notes that, even when the plaintiffs were given an opportunity before oral argument and during oral argument to be specific as to the claims, they simply submitted arguments which were exactly the same as to each plaintiff, with minor, insignificant exceptions.

The motion will be granted.

This ___27th___ day of March, 2003.

_____
ROBERT B. PROPST
**SENIOR UNITED STATES DISTRICT JUDGE**